**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **CECELIA KORNFEIND,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 18 C 3663** |
| | ) | |
| **TARGET CORP.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Cecilia Kornfeind sued Target Corporation in Illinois state court, asserting a claim of negligence in connection with a slip and fall at a Target store. Target removed the case to federal court based on diversity of citizenship. Target has moved for summary judgement. For the reasons stated below, the Court denies Target's motion.

### Facts

The Court takes the following facts from the parties' summary judgment submissions.

Kornfeind went to the Target store located at 4466 N. Broadway in Chicago on Sunday, March 13, 2016 with a group of people from her real estate class to study for a test. She arrived around 4:00 p.m. and studied at the Starbucks inside of the Target store for about two hours. When the study session finished around 6:00 p.m., Kornfeind became hungry and decided to go to the stores' Food Avenue to get something to eat with another person from her class named Valerie. Target's Food Avenue sells food

items like pizza, hot dogs, and popcorn. It is a "very high traffic portion of the store." Kornfeind stood in line there for about 10 minutes and says she was able to see the area where she eventually slipped. She does not recall seeing anyone drop anything on the floor. After placing her food order and asking for a cup for water, Kornfeind walked toward the soda machines and slipped and fell on a substance. She noticed that the substance was oily or greasy and three to four steps away from the food counter. The fall occurred on the tile floor directly in front of one of two mats that had been placed in front of the soda machines.

Several Target employees came to Kornfeind's aid. Victor Garduno arrived first after being called by a cashier; he paged Megan O'Connell, who then paged Jessica Medina. Medina completed an incident report. Dwayne Aponte, a Target "protection specialist," witnessed the incident via live surveillance.

Target has a policy that requires every employee to inspect and clean the floor within her assigned area of the store. Garduno was one of the employees responsible for periodically checking the front end of the store, where the Food Avenue is located, to make sure there are no dangerous conditions like spills. He described his routine for inspecting the floor as "briefly walking over." Garduno and O'Connell stated that the Food Avenue area was inspected within three to seven minutes before the fall and that no substance was observed on the floor at that time. Medina also stated that a walk-through is done by a Target employee every five minutes. Target witnesses testified that on this particular day, no Target employees were aware of the existence of the alleged substance, they received no complaints about the presence of any substance on the floor, and they were unaware of any prior incidents or complaints involving the

2

area of Kornfeind's fall.  Finally, Kornfeind does not recall the mats on the floor having any rips or tears.

## Discussion

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In considering a motion for summary judgment, the Court views the record in the light most favorable to the non-moving party and draw reasonable inferences in that party's favor.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002).  A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

To recover on a claim of negligence under Illinois law, the plaintiff must establish the existence of a duty owed by the defendant, a breach of that duty, and an injury proximately caused by the breach.  *See, e.g., Pavlik v. Wal–Mart Stores, Inc.*, 323 Ill. App. 3d 1060, 1063, 753 N.E.2d 1007, 1010 (2001).  Illinois law imposes upon businesses a duty to maintain their premises in a reasonably safe condition to avoid injuring their invitees.  *Reid v. Kohl's Dept. Stores, Inc.*, 545 F.3d 479, 481 (7th Cir. 2008).  Target does not dispute this, instead it argues that Kornfeind cannot demonstrate that it breached its duty.  Under Illinois law:

> [a] business owner breaches it duty to an invitee who slips on a foreign substance if (1) the substance was placed there by the negligence of the proprietor or (2) its servant knew of its presence, or (3) the substance was there a sufficient length of time so that, in the exercise of ordinary care, its presence should have been discovered, i.e. the proprietor had constructive notice of the substance.

3

*Pavlik*, 323 Ill. App. 3d at 1063, 753 N.E.2d at 1010 (internal quotation marks and brackets omitted). When a plaintiff alleges constructive knowledge, the amount of time that the substance was on the floor is "of critical importance." *Reid*, 545 F.3d at 481 (internal quotation marks omitted). "Absent any evidence demonstrating the length of time that the substance was on the floor, a plaintiff cannot establish constructive knowledge." *Id.* at 482.

Kornfeind contends that the evidence would allow a reasonable jury to infer that Target negligently caused the spill, had actual or constructive notice of the spill, or voluntarily assumed a duty to remedy all spills generated from the soda machines. Target disputes each contention. The Court addresses each point in turn.

**1.     Creation of the condition**

To establish that a business created a dangerous condition, "Illinois courts have required the plaintiff to (1) show that the foreign substance was related to the defendant's business and (2) offer some further evidence, direct or circumstantial, however slight, such as the location of the substance or the business practices of the defendant, from which it could be inferred that it was more likely that defendant or his servants, rather than a customer, dropped the substance on the premises." *Dvorak v. Target Corp.*, No. 16 C 8773, 2019 WL 2241872, at *5 (N.D. Ill. May 21, 2019).

Kornfeind has presented evidence that would permit a reasonable jury to find that the alleged substance was related to Target's business: she says it was an oily substance, and it was in an area where Target sells greasy food (pizza, hot dogs, popcorn) and/or cooks with grease. But she has not offered evidence that would permit a reasonable inference that it is more likely that Target personnel, rather than a

customer, dropped the substance.  Kornfeind argues that because the oily substance was a few steps from the food counter, a reasonable juror could find that it was placed there by Target employees.  But there is no evidence that would permit a reasonable jury to find this is more likely than a scenario in which a customer dropped food or grease while walking away from the counter; indeed, that is the more likely scenario.  In *Dvorak*, the court focused on the sequence of video-recorded events before the plaintiff's fall, which suggested that a Target employee dropped the object that caused the spill.  *Dvorak*, 2019 WL 2241872, at *5.  There is no similar evidence here. Kornfeind cannot succeed on a creation-of-the-condition theory.

## 2.    Actual notice

To survive summary judgment on a theory of actual notice, Kornfeind must present evidence that would permit a reasonable jury to find that Target employees actually knew of the existence of the substance prior to the fall.  First, Kornfeind questions whether O'Connell and Garduno's testified truthfully when they denied seeing the alleged spill before Kornfeind's fall.  But a plaintiff with the burden of persuasion cannot sustain its burden of proof "just by putting the defendant on the stand and asking the jury to disbelieve him."  *J.D. Edwards & Co. v. Podany*, 168 F.3d 1020, 1025 (7th Cir. 1999).

Kornfeind also argues that because Aponte stated that he saw the incident from the podium via live surveillance, he would be able to testify at trial what happened in the 10-20 minutes leading up to the incident.  Via this and related arguments, Kornfeind essentially argues that O'Connell, Garduno and Aponte should have been on notice that there was a spill because they were inspecting or observing the area prior to the event.

This essentially amounts to an attempt to hold Target liable as the "insurer of the premises," which is a higher standard than Illinois law imposes. *See Hurtado v. Costco Wholesale Corp.*, 2016 IL App (1st) 161038-U, ¶ 23, 2016 WL 7016861, at *4. Illinois courts "firmly adhere to the rule that a storekeeper is not the insurer of his customer's safety. Liability must be founded on fault, and where [. . .] there is no evidence, direct or inferential, of negligence by defendants in the maintenance of the store premises, liability may not be imposed." *Olinger v. Great Atlantic & Pacific Tea Co.*, 21 Ill. 2d 469, 474, 173 N.E.2d 443 (1961). Kornfeind has pointed to no evidence that Target received any complaints about the substance or that would otherwise support a finding that it knew about the substance on the floor before her fall.

### 3. Constructive notice

Constructive notice can be established "by either presenting evidence that (1) the dangerous condition existed for a sufficient amount of time so that it would have been discovered by the exercise of ordinary care, or (2) the dangerous condition was part of a pattern of conduct or a recurring incident." *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 651 (7th Cir. 2014). A business owner's liability based on constructive notice of a foreign substance depends upon the length of time that substance has been present. *Torrez v. TGI Friday's, Inc.*, 509 F.3d 808, 811 (7th Cir. 2007). "Of critical importance is whether the substance that caused the accident was there a length of time so that in the exercise of ordinary care its presence should have been discovered." *Id.* But there is no bright-line rule concerning how much time is sufficient to permit a finding of constructive notice. *Reid*, 545 F.3d at 483; *Peterson v. Wal–Mart Stores, Inc.*, 241 F.3d 603, 605 (7th Cir. 2001). Rather, Illinois courts have adopted a case-by-case approach

that involves consideration of the length of time the spill existed and the surrounding circumstances. *Reid*, 545 F.3d at 483. Relevant surrounding circumstances can include the area where the spill occurred, the time it occurred, the visibility of the spill, the store's policies on patrolling its aisles for spills, and so on. *Darmo v. Target Corp.*, No. 14 C 4827, 2016 WL 1161282, at *7 (N.D. Ill. Mar. 23, 2016), *vacated in part on reconsideration*, 2016 WL 5871486 (N.D. Ill. Oct. 7, 2016).

Kornfeind relies on, among other cases, *Peterson*, in which the Seventh Circuit reversed a grant of summary judgment. There the plaintiff testified that he had been in an aisle for about ten minutes before he slipped on lotion that appeared to come from a broken product. *Peterson*, 241 F.3d at 604. The defendant presented evidence that employees patrol each aisle for spills constantly; two employees testified that they had walked down the aisle just minutes earlier and saw no sign of spillage. Because "there was no basis in the record for estimating how much earlier the spill might have occurred," the court concluded that ten minutes was the outside time limit for the constructive notice inquiry. *Id.* The lower court granted summary judgment, holding that under Illinois law "ten minutes are too few to give a store owner constructive notice of a hidden danger on the premises." *Id.* The Seventh Circuit reversed, concluding that there is no *per se* rule that ten minutes is insufficient to establish constructive notice; rather, it depends on the circumstances. *Id.* at 605. Circumstances to be considered in relation to the length in time the spill was likely present include the business's internal procedures for monitoring spills and the customer traffic. "Where customer traffic is heavy and the probability of a slip and fall [is] therefore high [. . .], frequent and careful patrolling" may be necessary. *Id.* The court determined that in light of plaintiff's

testimony that he had been standing in that aisle for ten minutes before he fell the testimony that employees constantly patrolled the store for spills, a jury reasonably could conclude that the employees were careless in not noticing the spilled lotion.  *Id.*

In support of its motion, Target cites *Reid*, among other cases.  In that case, the plaintiff was walking from one section of the store to another when he slipped on a spilled milkshake.  *Reid,* 545 F.3d at 480.  The store manager testified that she had walked through that area no more than ten minutes before the fall and had not seen the spill.  Because the plaintiff failed to offer evidence to support a contention that the spill had been on the ground for longer than ten minutes, the court accepted ten minutes as the outside time limit that the spill could have been present.  *Id.* at 481.  But in affirming the district court's grant of summary judgment, the Seventh Circuit emphasized the need to examine the circumstances of the particular case, and it relied on uncontradicted evidence that "the store was almost empty" (not to mention that the slip and fall took place in a clothing department of the store), concluding that under the circumstances, "ten minutes was not enough to give [the defendant] constructive notice of the spill." *Id.*

Here the length of time the substance was on the store's floor is genuinely disputed.  Kornfeind contends the substance had to have been on the floor for at least ten minutes before she slipped and fell, basing this on her testimony that she was in line at the Food Avenue for approximately ten minutes, was able to see part of the area where she eventually slipped and fell, and did not see anyone drop or spill anything onto the floor.  Target contends the substance could not have been on the floor for longer than three to seven minutes.  It supports this position with Medina's statement

that a walk-through is done every five minutes and O'Connell's statement that she and/or Garduno had gone through the area within three to seven minutes before the fall and saw no spills. But given Kornfeind's testimony that she, too, had seen the area during that period and saw nothing being dropped or spilled, Target's evidence cannot be considered to be undisputed; a reasonable jury could find that O'Connell and Garduno missed the alleged spill (particularly given Garduno's testimony regarding the arguably cursory way he "inspected" the area). "[W]here there is no direct evidence as to how long a foreign substance has been on the floor, the inquiry becomes one for the fact finder at trial." *Perrin v. Dillard's, Inc.*, No. 17-cv-201, 2018 WL 3067844, at *1 (S.D. Ill. June 21, 2018).

In short, a reasonable jury could find that the substance on which Kornfeind says she slipped had been on the floor more than ten minutes before her mishap. And the fall occurred in a high-traffic area where food items were being sold for consumption, arguably making it predictable that there would be spills. For these reasons, this case is not like *Reid* in the current summary judgment posture. This is so even if one takes into account Target's arguments that the spill is claimed to have been small in size and thus not that easy to detect. That is certainly a factor that Target can argue at trial, but it does not (alone or together with the other evidence it cites) entitle Target to summary judgment.

In sum, the Court concludes that a reasonable jury could find that Target had constructive notice of a foreign substance on the floor that caused Kornfeind's fall and therefore breached its duty of car.

**4.        Voluntary undertaking**

Kornfeind also contends that by placing mats in front of the soda machines in the Food Avenue area of the store, Target voluntarily assumed a duty to catch all spills that could have originated from those machines.  The Court will address this point for the sake of completeness.

> Whether or not a duty of care exists is a question of law to be determined by the court.  Where the record presents only a question of law, a trial court may properly grant summary judgment. [. . .]  Our supreme court has implicitly adopted section 324A [of the Restatement (Second) of Torts].  However, *the duty of care to be imposed on the defendant is limited to the extent of its undertaking.*

*Robertson v. J.C. Penney Co.*, 251 Ill. App. 3d 523, 526, 623 N.E.2d 364, 366 (1993) (emphasis added; citations omitted).  In *Robertson*, the court, affirming the trial court's grant of summary judgment, concluded that J.C. Penney did not assume a duty to remove all water tracked into its store by placing two mats near its outside entrance.  *Id.*

In this case, there is no basis for a determination that any duty on the part of Target extended beyond maintaining with reasonable care the mats it installed.  And there is no evidence that the mats were defective in any way or that it failed to maintain them with reasonable care.  In fact, Kornfeind testified that she did not notice any rips or tears in the mats, and there is no evidence to the contrary.  That aside, there is no evidence that would permit a reasonable jury to find that Kornfeind slipped and fell due to a spill that came from the soda machines; indeed, Kornfeind stated that she slipped and fell on what she believed was an oily substance.  Thus no evidence would support a finding that any failure by Target to maintain the mats with reasonable care caused or contributed to Kornfeind's injury.

**Conclusion**

For the reasons stated above, the Court denies Target's motion for summary

judgment [dkt. no. 26].  The case is set for a status hearing on November 18, 2019 at

9:30 a.m. to set a trial date and discuss the possibility of settlement.

Date:  November 12, 2019

_____
                    MATTHEW F. KENNELLY
                    United States District Judge